UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

SOCIETE GENERALE ENERGIE CORP.,    :

            Plaintiff,    :

        - against -    :

NEW YORK MARINE AND GENERAL    :
INSURANCE COMPANY,
                             :
            Defendant.
                             :
- - - - - - - - - - - - - - - - - -x

**MEMORANDUM DECISION**

03 Civ. 4378 (DC)

**APPEARANCES:**    PALMER BIEZUP & HENDERSON LLP
                  Attorneys for Plaintiff
                      By:  Michael B. McCauley, Esq.
                          Richard Q. Whelan, Esq.
                          Kevin G. O'Donovan, Esq.
                  140 Broadway, 46th Floor
                  New York, New York  10005

                  LYONS, SKOUFALOS, PROIOS & FLOOD, LLP
                  Attorneys for Defendant
                     By:  Edward P. Flood, Esq.
                  1350 Broadway, Suite 1507
                  New York, New York  10018

**CHIN, D.J.**

        In July 1993, Societe Generale Energie Corp. ("SGE") discovered that approximately 1.7 million gallons of its petroleum was missing from a storage facility at Star Terminal in Highland, New York.  SGE sued a number of defendants, including Hudson Energy Terminal ("Hudson"), in this Court.  In 1997, the case was resolved as to all defendants except Hudson.  SGE apparently requested a default judgment against Hudson, but the Court did not rule on the application and the case was closed on July 31, 1997.

In December 2002, more than five years later, SGE wrote the Court (Brieant, J.) and asked that a default judgment be entered against Hudson. By memorandum endorsement filed December 12, 2002, Judge Brieant denied the request "[i]n light of the passage of time and laches." SGE did not appeal.

Although the case remained closed, in June 2003, nearly ten years after the loss, SGE and Hudson purported to settle the case. Hudson agreed to pay SGE $1.6 million plus attorneys' fees and costs and Hudson assigned to SGE all its rights under a commercial liability insurance policy it had with New York Marine and General Insurance Company, Inc. ("NY MAGIC"). When it entered into the settlement, SGE knew that Hudson had no assets to pay the settlement amounts and it did not intend even to attempt to collect any monies from Hudson. Instead, five days later, SGE brought the instant action against NY MAGIC, alleging that it was entitled, as assignee of Hudson's rights under the policy, to indemnification from NY MAGIC for the amounts that Hudson had agreed to pay SGE in settlement of the prior lawsuit.

Before the Court are the cross-motions of SGE and NY MAGIC for summary judgment. As discussed more fully below, I conclude as a matter of law that Hudson's purported settlement with SGE was not reasonable. Hudson's agreement to pay SGE $1.6 million plus fees and costs to settle a lawsuit that had been closed for more than five years made no sense. Accordingly, SGE's motion is denied, NY MAGIC's cross-motion is granted, and the complaint is dismissed.

## BACKGROUND

**A. The Facts**

The following facts are not in dispute, except where noted:

SGE is a French corporation that, for at least the period September 1992 to September 1993, was engaged in the wholesale distribution of petroleum products. (Def.'s 56.1 Statement ¶ 1; Pl.'s Counter-Statement ¶ 1). Star Terminal, Inc. ("Star Terminal") was a New York corporation that owned and operated a fuel storage terminal in Highland, New York. (Def.'s 56.1 Statement ¶ 2; Pl.'s Counter-Statement ¶ 2). Hudson was a New York corporation formed by Richard Ferrara in 1992 for the purpose of purchasing Star Terminal. (Def.'s 56.1 Statement ¶¶ 3, 4; Pl.'s Counter-Statement ¶¶ 3, 4). Neither Star Terminal nor Hudson is an active corporation. NY MAGIC is a New York corporation in the commercial insurance business. (Def.'s 56.1 Statement ¶ 6; Pl.'s Counter-Statement ¶ 6).

SGE entered into a storage agreement with Star Terminal on September 18, 1992 for storage of its petroleum products at the Star Terminal facility in Highland, New York. (Pl.'s Ex. A, Storage Agreement). The agreement provided that SGE's petroleum products could not be sold or removed from Star Terminal without prior payment to, and written approval from, SGE. (Id.). From the period September 1992 through July 1993, SGE regularly delivered petroleum products to Star Terminal for storage; as of July 1993, SGE stored more than 1.7 million gallons of petroleum

products at Star Terminal.  (Pl.'s 56.1 Statement ¶¶ 3, 4; Def.'s Reply Statement ¶¶ 3, 4).[1]

In early 1993, Star Terminal withdrew from operation of its terminal, turning it over to Hudson.  (Pl.'s 56.1 Statement ¶ 7).[2]  Hudson obtained a one-year Comprehensive General Liability insurance policy from NY MAGIC for the period December 30, 1992 through December 30, 1993.  (Pl.'s 56.1 Statement ¶ 21; Def.'s Reply Statement ¶ 21).  The anticipated sale of Star Terminal to Hudson was never consummated, but, according to plaintiff, Hudson maintained operation of the terminal.  (Pl.'s Counter-Statement ¶ 16).  NY MAGIC cancelled Hudson's policy effective June 27, 1993, for failure to pay premiums.[3]  (Def.'s 56.1 Statement ¶ 24).

In July 1993, SGE became concerned that it was not

---

[1] Plaintiff erroneously titled its statement of undisputed material facts "Rule 12G Statement of Facts."  For ease of reference, the Court will refer to it as Plaintiff's 56.1 Statement ("Pl.'s 56.1 Statement").

[2] Defendant disputes whether and, if so, when Hudson took over ownership and control of Star Terminal.  (Def.'s Reply ¶¶ 7, 11).  For purposes of these motions, I accept plaintiff's version.

[3] Plaintiff fails to submit any evidence to rebut this fact, presented by NY MAGIC through deposition, affidavit, and documentary evidence.  Plaintiff merely states in its 56.1 Statement that defendant's evidence is not based on personal knowledge and is inadmissible hearsay.  (Pl.'s 56.1 Statement ¶ 25).  I reject this argument.  The testimony was given by a Fed. R. Civ. P. 30(b)(6) witness who testified to the defendant organization's knowledge, and is supported by documentary evidence. (Smith Aff. Exs. 3, 4).  Nevertheless, I do not base my decision on the expiration of Hudson's policy; although the policy expired before the loss was discovered, it is not clear from the record before me when the loss occurred.  Furthermore, defendant does not base its motion on the cancellation, instead only stating it as a fact.

receiving regular inventory reports as required by the storage agreement; it appointed a surveyor to inventory its products at Star Terminal. (Pl.'s 56.1 Statement ¶ 5; Def.'s Reply Statement ¶ 5). SGE determined that approximately 1.7 million gallons of petroleum products were missing from Star. (Pl.'s 56.1 Statement ¶ 6; Def.'s Reply Statement ¶ 6). SGE placed its insurer -- certain Underwriters at Lloyd's -- on notice of a claim for the lost products. (Pl.'s 56.1 Statement ¶ 17; Def.'s Reply Statement ¶ 17). SGE's insurer paid SGE $2 million under its policy. (Id.). The consulting firm hired by SGE's insurer concluded that the missing petroleum had been stolen. (Def.'s 56.1 Statement ¶ 20; Pl.'s Counter-Statement ¶ 20).

**B.  Prior Suit and Settlement**

On February 24, 1995, SGE filed a diversity action in this Court against, inter alia, Star Terminal and Richard Ferrara for breach of contract, bailment, and conversion. Societe Generale Energie Corp. v. Ferrara, 95 Civ. 1307 (CLB) (S.D.N.Y. 1995). SGE filed an amended complaint on May 8, 1997, adding Hudson as a defendant.[4] (Pl. Ex. G). SGE mailed a copy of the amended complaint to NY MAGIC on June 6, 1997. (Pl.'s 56.1 Statement ¶ 22; Def.'s Reply Statement ¶ 22; Pl. Ex. I). In response, NY MAGIC sent a letter dated June 12, 1997 to SGE

---

[4]  Defendant questions whether Hudson was ever properly made a party to the prior action. The docket sheet does not reflect whether Judge Brieant granted leave to amend the complaint or the parties consented, pursuant to Fed. R. Civ. P. 15(a). Because I grant defendant's motion, this issue is moot.

stating that the claims "would not fall under [Hudson's] policy." (Pl. Ex. J).[5]

On June 13, 1997, Judge Brieant entered a default judgment in the amount of $1.6 million against Star Terminal, and on July 31, 1997 entered a stipulation of judgment against Emporium Oil Terminal, that also dismissed the complaint as to Richard Ferrara. (Pl. Ex. L, docket sheet). On July 14, 1997, SGE filed a request for a default judgment against Hudson,[6] but Judge Brieant apparently took no action on it. The Clerk of the Court closed the case on July 31, 1997. (Pl. Ex. L, docket sheet).

Nearly five and a half years later, SGE's counsel wrote a letter to Judge Brieant, explaining that the Court had never ruled on its request for a default judgment against Hudson, and asked that Judge Brieant do so. (Pl. Ex. M, letter dated December 9, 2002). Judge Brieant "memo endorsed" the letter, declining to enter a default judgment and stating:

---

[5] The parties hotly contest whether this letter constitutes a denial of coverage (Pl. Mem. 14-16; Def. Opp. Mem. at 4-5), such that any defenses to coverage not raised in the letter are waived. Because I grant defendant's motion on other grounds and do not reach its arguments for denial of coverage, I need not decide the issue.

[6] Defendant contests whether SGE actually filed the request for a default judgment, as the docket sheet does not reflect such a filing. The docket sheet, however, does not reflect the filing of the other request for a default judgment, which was granted. The photocopy SGE has submitted of the default judgment does contain a stamp which may indicate receipt by the Court Clerk. (Pl. Ex. K). Resolving this factual dispute in the light most favorable to SGE for the purposes of defendant's motion, I assume that SGE did file the request for a default judgment against Hudson.

> [t]his letter is treated as some sort of motion in a case long since closed. The last docket entry is August 13, 1997, more than five years ago. In light of the passage of time and laches the Court declines to issue a default judgment at this time. So Ordered.

(Pl. Ex. N). The order was filed on December 12, 2002. On March 25, 2003, SGE submitted a "Motion for Order of Default" against Hudson. In its memorandum accompanying the motion, SGE argued that laches did not apply, and that Hudson would not be prejudiced by the delay in entering default, because SGE did "not intend to attempt to collect any judgment directly from Hudson," as SGE was aware that Hudson had no assets to satisfy a judgment. (Pl. Ex. O, Mem. at 5). Judge Brieant took no action on the motion.[7]

On June 12, 2003, nearly six years after its case against Hudson was closed, SGE settled with Hudson as Hudson purportedly agreed to pay the sum of $1.6 million dollars, plus attorneys' fees and interest, to SGE. Hudson assigned to SGE "any and all rights, title, interest, claims and causes of action" that Hudson had against NY MAGIC under its insurance policy. The parties also agreed that the settlement was "fair and reasonable based on the claims asserted by SGE against Hudson in the lawsuit." (Pl. Ex. P, Settlement Agreement). Five days later, SGE filed the instant action against NY MAGIC.

---

[7] The docket sheet does not reflect the filing of this motion; for purposes of defendant's motion, I assume the motion was filed.

## D. The Instant Action

As the assignee of Hudson's claims against NY MAGIC, SGE sues NY MAGIC for indemnification for the settlement amount.[8] SGE moves for summary judgment arguing that NY MAGIC improperly denied Hudson coverage under the contract, and that NY MAGIC is liable for the settlement amount. NY MAGIC cross-moves for summary judgment, arguing, inter alia, that Hudson has no viable claim against NY MAGIC and that therefore SGE, as Hudson's assignee, has no valid basis to sue NY MAGIC. Because I conclude that the settlement between SGE and Hudson was unreasonable as a matter of law, defendant's motion for summary judgment is granted.

## DISCUSSION

### A. Summary Judgment Standard

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party therefore is entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Accordingly, the court's task is

---

[8] In its complaint, SGE states that the Court has subject matter jurisdiction over this case under both 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1333 "because this is a claim arising under a marine insurance policy." (Compl. ¶ 3). Nevertheless, SGE later argues that "since this case arises from the loss of petroleum products from on-shore storage tanks, it is questionable whether maritime law should even apply." (Pl.'s Mem. Opp. at 6, n. 13).

not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). There must be sufficient evidence in the record to support a verdict in the nonmoving party's favor to create an issue for trial. See id.

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

**B.  Reasonableness of the Settlement**

   **1.  Applicable Law**

When an insurer declines coverage, "the insured may settle with third parties without prejudicing its rights against

the insurer." Amalgamet, Inc. v. Underwriters at Lloyd's, 724 F. Supp. 1132, 1142 (S.D.N.Y. 1989). The insured need not show "actual liability to the party with whom it has settled so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured]." Luria Bros. & Co. v. Alliance Assurance Co., 780 F.2d 1082 (2d Cir. 1986) (internal quotation omitted). The settlement must be "made 'in good faith.'" Amalgamet, Inc., 724 F. Supp. at 1142, quoting Bunge Corp. v. London & Overseas Ins. Co., 394 F.2d 496, 497 (2d. Cir. 1968).

### 2. **Application**

NY MAGIC argues that the settlement between SGE and Hudson was not reasonable. SGE opposes, arguing that "there is ample evidence that would have supported SGE's claim against Hudson" for the missing petroleum products, including evidence that Hudson had taken over responsibility of storing SGE's petroleum products and that Hudson representatives had provided false inventories to SGE. (Pl.'s Mem. at 18). Even if SGE could demonstrate Hudson's potential liability, the settlement was unreasonable as a matter of law.

At the time SGE and Hudson settled, SGE's case against Hudson was closed and its claims against Hudson were surely time-barred. The Court closed SGE's case against Hudson, whether inadvertently or not, on July 31, 1997. SGE did not appeal or

take any action in response to that closure until December 9, 2002, some five and a half years later.  Judge Brieant refused to enter a default judgment on December 12, 2002.  SGE did not file this action until June 17, 2003.

New York law provides that a plaintiff whose action is terminated in certain circumstances may commence a new action on the same transaction within six months after termination.[9] N.Y. C.P.L.R. § 205(a).  After the Court's apparently inadvertent closure of SGE's case on July 31, 1997, a circumstance that would fall under the provisions of § 205(a), SGE had until January 31, 1998 to file another action in this Court that would have been considered timely.  SGE never attempted to file another action against Hudson.[10]

Because SGE failed to file another action within six months of the termination of its case against Hudson, the statutes of limitations on its claims against Hudson continued to run.  By the time SGE and Hudson entered into their settlement, all of SGE's claims against Hudson -- breach of contract,

---

[9] The prior action must have been timely filed at the time of its commencement.  Here, defendant argues that, at least as to the tort claims alleged, plaintiff's claims against it were not timely.  (Def.'s Mem. at 22).

[10] SGE would perhaps argue that its case against Hudson was not "terminated" until Judge Brieant's December 12, 2002 order, and that the settlement occurred within six months from that date, i.e., when the possibility of filing another timely action still existed.  This argument fails: § 205(a) does not allow filing of another action where the prior action was terminated by a dismissal for failure to prosecute or a final judgment on the merits.  Judge Brieant's order qualifies as either.

bailment, and conversion -- were time-barred.[11]  SGE was not likely to succeed in any argument that the statutes of limitations should be equitably tolled; therefore there was little chance that SGE would be able to institute another action on these claims against Hudson ever again.  It was unreasonable for Hudson -- faced with claims long-since dismissed and long-since expired -- to settle at all, let alone for the entire amount of SGE's claims against it: $1.6 million, plus attorney's fees and interest.

In addition, Hudson could have opposed any new action filed by SGE in another court on the basis of laches and/or res judicata.  SGE waited nearly five and a half years after closure of its case to alert the Court to the default judgment it asserts was previously filed and not decided.  Judge Brieant previously found that laches precluded SGE's requested default judgment in 2002; another court would likely find another suit barred under the same rationale.  Additionally, another court would also likely find that the dismissal, based on laches, barred another action on the same claims under the principles of res judicata.

---

[11]   The conduct alleged in the complaint against Hudson underlying the breach of contract and tort claims occurred, at the latest, in July 1993.  Therefore, the statute of limitations for the breach of contract claim ran in 1999 and for the tort claims in 1996, or on January 31, 1998 (six months after the prior suit terminated).  N.Y.C.P.L.R. §§ 205, 213, 214.  The statute of limitations for the bailment claim would have run either in 1993 or 1996, depending on whether the bailment claim sounded in tort or contract.  See e.g., Baratta v. Kozlowski, 464 N.Y.S.2d 803, 809 (2d Dep't 1983).  The Court notes that the storage agreement between SGE and Star Terminal included a choice of law provision requiring application of New York law.  (Pl.'s Ex. A at 5).

See 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4441 (dismissal based on laches is a final adjudication on the merits for claim preclusion purposes).

The settlement between SGE and Hudson surely was a sham. Hudson was defunct and SGE never intended to even attempt collection against it. Even assuming the settlement was not a sham, the settlement was unreasonable as a matter of law. Hudson had meritorious defenses to SGE's claims -- statutes of limitations, laches, and res judicata -- such that settling for 100 cents on the dollar was patently unreasonable. Regardless of whether NY MAGIC's refusal to indemnify Hudson in 1997 was wrongful, NY MAGIC cannot later be held liable for the unreasonable settlement entered into by its insured and SGE.

## CONCLUSION

NY MAGIC's motion for summary judgment is granted as to all claims. SGE's motion for summary judgment is denied and its complaint is dismissed with prejudice and with costs. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
May 6, 2005

DENNY CHIN
United States District Judge